# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

UNITED STATES OF AMERICA

V.                                                                   No. 3:21-CR-118
                                                                         JUDGE JORDAN

NELSON REPLOGLE

## SENTENCING MEMORANDUM AND REQUEST FOR DOWNWARD DEPARTURE

### INTRODUCTION

Comes the Defendant, Nelson Replogle, by and through counsel, and respectfully submits the following Sentencing Memorandum setting forth the factors which the Court should consider in determining the type and length of sentence that is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a) and the factors provided by USSG § 5K1.1.

The United States Sentencing Guidelines are no longer mandatory, but instead provide the "starting point and initial benchmark" for the Court's sentencing decision, but are not the only consideration. Gall v. United States, 552 U.S. 38 (2007); *accord* Cunningham v. California, 549 U.S. 270 (2007). District courts are now required to consider the Guidelines, but should "tailor the sentence in light of other statutory concerns, as well." Kimbrough v. United States, 552 U.S. 85

(2007). As a result, the Court should consider all of the factors set forth in 18 U.S.C. § 3553(a). Gall, 128 S.Ct. at 596.

The primary directive in 18 U.S.C. § 3553(a) is for the sentencing court to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph two." 18 U.S.C. § 3553(a)(2) states that such purposes are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a) further directs sentencing courts to consider (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (3) the kind of sentencing available; (4) the kinds of sentence and the sentencing range established for the type of offense committed by the defendant as set forth in the United Stated Sentencing Guidelines; (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

In the present case, United Sates Probation officer, Robert Queener, has calculated Mr. Replogle's potential sentence as recommended by the United States Sentencing Guidelines. Mr. Replogle's range, as calculated by the

Presentence Investigation Report (herein after "PSR"), based on an offense level 29 and a criminal history category of I, is a range of imprisonment of 87 to 108 months. Mr. Replogle is requesting this Court to grant him a downward departure based on U.S.S.G § 5k2.2 and is asking that he be placed on home confinement and probation.

## 18 U.S.C. § 3553 FACTORS

**I.   The nature and circumstances of the offense and the history and characteristics of the defendant.**

Nelson Replogle (herein after Nelson) was born on February 19, 1962, in Hastings, Michigan. His parents, Louise and Ferel Replogle, raised Nelson and his brother, James Replogle, in Hastings. They are still married to this day. Nelson describes his childhood as good and being raised in a loving home. Nelson graduated Hastings High School in 1980 with a 3.15 GPA. He went on to graduate from Michigan State University in 1986 with a major in history and again in 1990 with a major in special education. In 2008, Nelson obtained his master's degree in history from Central Michigan University.

Nelson spent thirty years teaching history in public school system. Much of his career Nelson taught history to high school students in the Grand Rapids area. Nelson also spent a lot of time coaching baseball and football to those same high school students. Years before Nelson was involved in the case, his students wrote him:

> **I was lucky to have the best teacher in the world. Wherever I may go in my life, I will always remember that I had an excellent guide in the form of a teacher.**

> **I want to thank you for being such a great teacher and mentor for me.**
>
> **'I will never forget you for all you have done and what you said on Friday. I couldn't do it in front of you but I cried. I didn't know what to say. I feel like I'm going nowhere and then you push me even when you're not right here. You will always be more than a coach to me and I will never forget you. You push me to the limits I have never seen, I owe you it all!**
> *See attached letters*

Nelson was nominated and recognized several times over his teaching career for the impact he had on his students. A letter reads:

> **I am proud to congratulate you on being selected for inclusion in the ninth edition of *Who's Who Among America's Teachers 2005*. I believe you will find this honor exceptionally gratifying since it comes from a successful former student who recommended you because you made a difference in his or her life.**
> *See attached letters.*

Nelson received this nomination by three different students in two years. Not only did Nelson spend his time teaching and coaching high school kids, but he would also spend his weekends participating in Civil War reenactments. He did this from 1986 up until his arrest. Nelson's fellow teacher, Donna von der Hoff, writes:

> **Nelson always impressed me with how much effort he put into making sure each of his students was progressing. In fact, he is the only teacher I knew to give up his lunch hour every day to work with students to ensure their success. More evidence of Nelson's positive impact on students is in the numerous times shared with me how they loved history because of him and how his class was their favorite. In fact, I know of students who went on to become history teachers because of the positive influence he had on them.** *See attached letter.*

In 2006, he was selected by the high school graduating class to give their commencement address at graduation. It was one of Nelson's proudest moments.

The victim in this case is Ann Replogle, who is Nelson's wife. They met at a mutual friend's house in the spring of 1987. Ann was a teacher in Hastings, and the two immediately hit it off. They were married in late summer 1988. For the first five and half years they tried to have children but were unable. Thereafter, they legally adopted two children at birth, Nicholas and Alexis. Alexis writes:

> **My father has always put everyone else before himself making my childhood and early adulthood special. Growing up, my dad was the one who taught me everything I know… He has been the biggest cheerleader in my studies and has supported me through my disappointments along the way.** *See attached letter*

Nelson and Ann raised the children as their own and dedicated their lives to their children and work. Nelson's brother. Jim, writes:

> **Through the up and downs of life, he has remained especially steadfast in his commitment to, and his love for, his family. Every decision I have seen him make has put needs of his family first. From the very beginning of Ann's and Nelson's marriage, when they were unable to have children, they worked together to adopt two newborns. As they raised their children together, when faced with their children's educational struggles or emotional challenges, they did everything within their means to help them succeed.** *See attached letter.*

His wife, Ann writes:

> **Family always came first in my husband's thoughts and actions. He was there for the children through the good times and the times that were difficult. He celebrated their success in school and athletics, but also spent countless hours of time and effort to coach, teach, and foster improvement in all areas. Even once our children became adults, Nelson would drop everything if they needed support and/or help.**

After thirty years in the education system and successfully raising their children, Ann and Nelson decided to retire. In July of 2018, they moved to Knoxville, TN to enjoy warmer weather in retirement. Their daughter, Alexis came

with them so she could finish college with the support of her parents. Nelson took a part time position at Pellissippi College as a history teacher and another part time position at Enterprise delivering rental vehicles. Ann enjoyed staying at home and knitting.

Nelson has suffered from depression and social anxiety since being a kid. In his early years in college, he became so severely depressed that he contemplated suicide. *See attached psychological evaluation.* A recent psychological evaluation revealed that Nelson had suffered from depression in the past and it was "indicative of a person who is unhappy as least part of the time, sensitive, pessimistic, and prone to self-doubt." *See attached psychological evaluation.* In retirement, Nelson was not as busy, nor did so many people depend on him as he did while teaching full time. He was feeling a little down, but he had dealt with these episodes in the past and believed they would pass. Then the Covid 19 pandemic came and everything changed.

In November of 2020, Nelson contracted Covid. He was sick for over two weeks. Nelson had such problems breathing, that at one point he went to the hospital. He thought he was going to die. It took him over a month to recover his stamina. Evidence would suggest that he was a longer hauler. Nelson states that he felt different after recovering from Covid. Things that use to interest him no longer did. He felt a change in his personality, but he also felt more depressed. His wife Ann writes:

> **Nelson's behavior started to change over the months of February, March, and April of 2021. This followed a lengthy sickness due to Covid in November. He mentioned feeling depressed, was restless, irritable, and distant. He also**

**mentioned he felt his personality had changed.** *See attached letter.*

In an interview with the FBI on the day of Nelson's arrest, Ann told the agents that Nelson's personality began to change a little while after getting Covid. His daughter Alexis writes:

> **[In Febuary] he told me that Covid did something weird to him. He has suffered from social anxiety his whole life, but for some reason, it was gone. Instead, he told me that he was left with depression. He told me that this was the most depressed he had felt in his life. He told me that in college he had been depressed, but this was worse than that.**

In December of 2020, after recovering from Covid, Nelson began talking with women on dating websites for married people. Nelson found that it made him feel alive and lifted the depression for short periods of time. He became more involved and soon he was texting with a couple of different women. Then he took the next step and met with them. He would tell Ann he was going out of town for one of his Civil War reenactment meetings, but instead he would meet with women he had been texting. There were several of these trips that involved a couple of different women. These brief trips would take him out of the severe depression he was feeling. However, the relief was short lived. At times he considered suicide. This behavior lasted several months.

In April, Nelson got on the dark web and thought he was hiring someone to kill his wife. He requested that the event playout like an act of road rage or a carjacking gone wrong. Nelson further provided where Ann would be on April 20, 2020. He made several transactions over a short period of time using bitcoin as a form of payment. Nelson did this by transferring money from his known bank

account to Coinbase (a bitcoin exchange platform). The plot was discovered by a non-law enforcement agency investigating murder for hires on the dark web and the plot was reported to the FBI. Nelson was arrested on April 20, 2020. The site Nelson paid was not actually run by hitmen, but rather they just claimed to be and took the money from people willing to pay.

Nelson still is not sure what he was thinking at the time. It seems more like a bad dream. He recalls struggling with calling off the whole thing off, but he never did. Nelson says he felt like his thoughts were cloudy and unclear. One thing is certain, his actions came as a complete shock to everyone.

Covid-19 has not been around long enough for scientist to fully understand the effect the virus can have on the brain. However, preliminary studies suggest that patients with longer bouts of Covid 19 (long haulers) could suffer from serve depression if they have been predisposed to depression in the past. More importantly, Covid -19 can cause cognitive impairment of the brain for months after the patient has tested negative for the virus. Meaning the brain is not functioning as normal. *See article mark as Article 1 filed as an exhibit to this memo.* Furthermore, this virus can cause structural and functional alterations of the patient's brain. *See article mark as Article 2 filed as an exhibit to this memo.* Several articles have been attached to this memorandum to help this Court better understand the affects Nelson was suffering after his long bout with Covid 19. These articles seem to match the behavior Nelson was describing and portraying long before his arrest. A forensic psychological evaluation report is also attached to the memorandum for the Court's consideration. The evaluation was conducted

by Kathryn Smith. She found that it is plausible that the Covid related inflammation of the brain could have caused the change in Nelson's personality, however these hypotheses are still being studied by scientists.

## II. The need for the sentence imposed.

### A. To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.

Every aspect of Nelson's life suggests that he has had a strong respect for the law. Just punishment for his actions is the key question for this Court. Nelson is a fifty-nine-year-old man who, for his whole life, has been more than a model citizen. He has dedicated his life to teaching the history of this country to his students. He worked thirty years in public education system. He saved money, raised his children, provided for his family, and sacrificed himself along the way. He has no criminal history and has never spent a day in jail until this event.

Nelson has been in custody since April 20, 2021. During his time jail he has spent most of it on lock down for Covid related reasons. Furthermore, he has been suffering from severe depression, anxiety, embarrassment, regret, and shame. He has contemplated taking his own life several times. Nelson has felt the punishment of his actions. These actions when compared to the rest of his life are an anomaly. Nelson should receive the benefit of doubt when looking at his life compared to his behavior of a couple of weeks after a long bout of Covid. Home confinement followed by probation will reflect a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553.

**B.     To afford adequate deterrence to criminal conduct.**

Mental health treatment more than any time in prison will provide deterrence from criminal conduct. Again, Nelson has led a law-abiding life for fifty-nine years until this incident.

**C.     To protect the public from further crimes of the defendant.**

Nelson has not given the public a reason to fear he will commit any further crimes. Mental health treatment, home confinement, and probation will adequately satisfy this factor.

**D.     To provide the defendant with the needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.**

At Nelson's stage in life, he would only benefit from mental health treatment. Treatment provided outside of the Federal Bureau Prison would serve him better than in prison.

**III.    The kinds of sentences available and the sentencing range established by the sentencing guidelines.**

Nelson's sentencing guideline is a range of imprisonment of 87 to 108 months. The guidelines suggest that Nelson is ineligible for probation, however there is no statutory provisions that prohibit him from receiving probation. Furthermore, Nelson is asking for a downward depart based upon § 5K2.20, aberrant behavior, which will give this Court a reason to depart from the suggested guideline range and place Nelson on probation.

## IV. The need to avoid unwarranted sentence disparities among defendants with similar conduct.

When considering the factors provided by 18 U.S.C. § 3553 and the downward departure requested by Nelson, a sentence of probation with home confinement and intense mental health treatment will not be an unwarranted sentence disparity.

## V. The need to provide restitution to any victims of the offense.

There is no restitution in this case.

## MOTION FOR DOWNWARD DEPARTURE

Nelson respectfully requests that this Court to grant him a downward departure based aberrant behavior. U.S.S.G. § 5K2.2(b) provides:

**The court may depart downward under this policy statement only if the defendant commits a single criminal occurrence or single criminal transaction that (1) was committed without significant planning; (2) was limited duration; and (3) represents a marked deviation by the defendant from an otherwise law- abiding life.**

Nelson did not commit this crime with significant planning. He attempted to use a service on the dark web that was not even real. Basically, he signed on to a money scam. Any type of real planning or research would have avoided such a generic service. Nelson, being a man of his education and life experience must have not been in his right mind to think he could just get on the web and have his wife killed that easily. He did set up a Coinbase account and make several withdraws from his bank account, but this was not planning, it was to facilitate the payment at the direction of the scammers. These transactions themselves show the lack of planning involved, being that he left a money trail from his personal

bank account. He did nothing to attempt to cover up his actions. In fact, the passwords to his Coinbase account and personal bank account were left where they could easily be found in his home. *See attached evidence provide by the Government*. In the end he found the website, made the payment, and let them know where his wife would be on April 20, 2020. When looking at his fifty-nine years as a whole, this act cannot be viewed as taking significant planning.

This crime was limited in duration as was a single act that took less than two weeks. Most of that time was spent transferring the funds to bitcoin then to the scammers.

When looking at Nelson's life as outlined in this memorandum, it is clear this act was a deviation by Nelson from an otherwise law-abiding life. Based on the foregoing reasons, Nelson respectfully requests that this Court grant his downward departure.

## **CONCLUSION**

Nelson respectfully requests that this Court grant him a downward departure and sentence him to a term of probation that includes home confinement, intense mental health treatment, and any other conditions this Court find necessary.

Nelson requests that any fine be waived because such a fine would come from the victim and his shared assets, which in turn would punish the victim. Otherwise, Nelson has no issue with a fine.

Respectfully submitted this 10th day of February 2022

                                                        s/ Joseph A. Fanduzz
                                                      Joseph A. Fanduzz (BPR#026296)

Attorney for Blake Wright
800 South Gay Street, Suite 2100
Knoxville, TN 37929
(865) 386-1519

**CERTIFICATE OF SERVICE**

    I hereby certify that on February 10, 2022, a copy of the foregoing Motion was filed electronically. Notice of the filing will be sent by operation of the Court's Electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U. S. mail. Parties may access this filing through the Court's electronic filing system.
This the 10th day of February 2022.

                                                __s/ Joseph A. Fanduzz_____
                                                Joseph A. Fanduzz